IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAY 1 9 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| KRAZE BURGER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19cv0717 (CMH/JFA) |
| | ) |
| KRAZE INTERNATIONAL, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on a motion for default judgment filed by plaintiff Kraze

Burger, Inc. ("plaintiff") against defendant Il Seon Noh ("defendant") pursuant to Federal Rule

of Civil Procedure 55(b)(2).[1]  (Docket no. 23).  Pursuant to 28 U.S.C. § 636(b)(1)(C), the

undersigned magistrate judge is filing with the court his proposed findings of fact and

recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On June 4, 2019, plaintiff filed a complaint against defendant and Kraze International.

(Docket no. 1) ("Compl.").  Following multiple extensions on the deadline to serve defendant

(Docket nos. 9, 12, 14), plaintiff filed an affidavit on May 10, 2021 that indicates defendant was

served on November 18, 2020 through the Central Authority for Korea under the Hague

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

Commercial Matters ("Hague Service Convention"), T.I.A.S. No. 6638, 20 U.S.T. 361 (1965)

(Docket no. 15).  In accordance with Federal Rule of Civil Procedure 12(a), defendant's

---

[1] Defendant Kraze International, Inc. ("Kraze International") was named in the complaint, but the motion for default judgment was only filed against defendant Il Seon Noh. (Docket nos. 1, 23).

responsive pleading was due on December 9, 2020. Defendant failed to file a timely responsive pleading.

On August 26, 2022, District Judge O'Grady ordered plaintiff to immediately obtain a default against defendant.[2] (Docket no. 16). Plaintiff requested an entry of default against defendant on September 23, 2022. (Docket no. 18). The Clerk of Court entered default against defendant on September 30, 2022.[3] (Docket no. 21). On February 23, 2023, District Judge Hilton ordered plaintiff to file a motion for default judgment and accompanying memorandum in support, notice a hearing on the motion for Friday, March 31, 2023, and mail copies of the notice, motion, and memorandum to defendant. (Docket no. 22). On March 24, 2023, plaintiff filed a motion for default judgment against defendant, a memorandum in support, and a notice of hearing for Friday, March 31, 2023. (Docket nos. 23–25). Plaintiff certified that the notice of hearing was mailed to defendant (Docket no. 25 at 2), but plaintiff did not certify that the motion or memorandum was mailed to defendant. Plaintiff also did not provide the *Roseboro* notice required by Local Civil Rule 7(K).

On March 31, 2023, this motion was called in open court, and plaintiff's counsel appeared, but no one appeared on behalf of defendant. At the hearing, the undersigned noted deficiencies in the complaint and memorandum in support of the motion for default judgment and ordered plaintiff to file a supplemental memorandum addressing the issues. (Docket no. 26). Plaintiff filed a memorandum of points and authorities in further support of the motion for default judgment ("supplemental memorandum") on April 21, 2023. (Docket no. 27). As one of

---

[2] This case was reassigned to District Judge Hilton in September 2022.

[3] The Clerk of Court also entered default against Kraze International in addition to defendant. (Docket no. 21). That entry of default against Kraze International should be set aside, as plaintiff only requested default against defendant (Docket no. 18), and plaintiff has not been able to serve Kraze International (Docket no. 24 at 3).

the exhibits to the supplemental memorandum, plaintiff included an answer from defendant dated April 11, 2023.  (Docket no. 27-2).  The answer does not otherwise appear on the docket as having been filed by defendant, and it argues that this court lacks subject matter and personal jurisdiction.  *Id.*

## **Factual Background**

### Master Franchise Agreement

The following facts are established by the complaint, memorandum in support of the motion for default judgment, and supplemental memorandum, and the accompanying exhibits to each.  (Compl.; Docket nos. 1-1–1-4; 24–24-4; 27–27-4).  Plaintiff is a Virginia corporation that owns and operates retail hamburger restaurants in the Washington, DC metropolitan area, including Virginia.  (Compl. ¶¶ 2, 8).  Kraze International is a foreign corporation of the Republic of Korea ("South Korea") that was registered to do business in Virginia in August 2011.  (Compl. ¶¶ 3, 9).  Kraze International allowed its corporate status in Virginia to be revoked and terminated on or about December 31, 2012.  (Compl. ¶¶ 3, 9).  Defendant, who resides in South Korea, was the President and a director of Kraze International during all times relevant to this action.  (Compl. ¶¶ 3, 10).[4]

On or about September 7, 2010, plaintiff and Kraze International entered into a master franchise agreement ("MFA") for plaintiff to become the master franchisee in the United States for the Kraze Burger chain, while Kraze International was to act as the master franchisor. (Compl. ¶ 11).  Kraze International represented itself to plaintiff as an experienced franchisor in South Korea with the expertise, organizational ability, and franchising experience necessary to assist plaintiff in establishing a franchise operation in the United States.  (Compl. ¶ 16).  Plaintiff

---

[4] There are two paragraphs numbered three (3) in the complaint.

relied on the representations made by Kraze International, which included that Kraze International would make periodic revisions to manuals to promote the Kraze Burger Operational System and that Kraze International would be actively involved in overseeing ongoing U.S. operations to assist in the development of a successful restaurant franchise system. (Compl. ¶ 18).

Under the MFA, Kraze International agreed to provide plaintiff various forms of support to enable plaintiff to undertake successful franchising operations in the eastern half of the continental United States. (Compl. ¶ 13). Kraze International was obligated to provide plaintiff support and assistance, which included ongoing training, product information, recipes, operations material, design assistance, operations and training manuals, field consultants, franchisee setup schedules and related materials, advisory assistance, marketing and promotions assistance, and research and development of new products and services. (Compl. ¶ 14). Kraze International was also obligated to provide plaintiff with ongoing assistance regarding necessary products, services, and techniques, all of which were critical to conduct franchising operations in the United States and to promote the success and viability of franchise units. (Compl. ¶ 15). In return, plaintiff was obligated under the MFA to conduct operations in the United States in accordance with the Kraze Burger manuals and procedures. (Compl. ¶ 17). Plaintiff paid Kraze International a sum of $150,000 under the MFA. (Compl. ¶ 19). The parties agreed that Virginia law would apply to the MFA, and the parties exclusively elected to be subject to the jurisdiction of Virginia courts, including this court and the Circuit Court of Fairfax County, Virginia. (Compl. ¶ 12).

**Failure to Perform Under MFA**

Plaintiff alleges Kraze International failed to provide plaintiff a workable functioning franchise system of operating hamburger franchise restaurants in the United States, and it failed to support and assist plaintiff with setting up and operating a franchise organization. (Compl. ¶ 20). When the first Kraze Burger restaurant was opened in the United States in or about December 2011, Kraze International had no active presence in the United States to assist plaintiff with this opening. (Compl. ¶ 21). Kraze International refused to send plaintiff Kraze Burger recipes for its sauces, financial information regarding profit and losses of the South Korean franchisees, the profit margins on its products, sample food and labor costs, equipment lists, sample agreements or contracts with suppliers and franchisees, human resource materials, food inventory lists, or any other essential ingredients to assist in the establishment of an operational retail food franchise system. (Compl. ¶ 24). Kraze International also repeatedly declined requests from plaintiff for assistance in establishing a United States franchise system of operations. (Compl. ¶ 22).

Plaintiff claims it invested millions of dollars into its United States restaurant units and operations, in compliance with its obligations under the MFA, and otherwise used its best efforts to establish a successful Kraze Burger franchise operation in the United States. (Compl. ¶ 23). In 2013, Kraze International completely ceased any support of the operations in the United States with plaintiff. (Compl. ¶ 25). Plaintiff alleges that the failure of Kraze International to support plaintiff in its establishment of a franchise system in the United States was a breach of Kraze International's obligations to plaintiff under the MFA. (Compl. ¶ 28). As a result of these breaches by Kraze International, Kraze Burger failed as a burger restaurant franchise in the

United States, which caused plaintiff to close its restaurant units and lose funds invested into its franchise operations. *Id.*

**Lawsuit and Bankruptcy Proceedings**

On December 2, 2014, plaintiff initiated a lawsuit against Kraze International in Fairfax County Circuit Court for breach of contract. (Compl. ¶ 30). Kraze International filed a counterclaim in the action, and the matter was scheduled for trial on August 15, 2016. (Compl. ¶ 31). On or about March 14, 2016, Kraze International filed for bankruptcy protection in the Seoul Central District Court in Seoul, South Korea. (Compl. ¶ 32).

On June 20, 2016, Kraze International filed a voluntary petition for recognition of foreign bankruptcy under Chapter 15 of the United States Bankruptcy Code in the United States Bankruptcy Court for Eastern District of Virginia ("Bankruptcy Court"). (Compl. ¶ 33; Docket no. 1-1); *see In re Kraze Int'l Inc.*, Case no. 16-12143-BFK (Bankr. E.D. Va.) [hereinafter "Bankruptcy Proceeding"]. Defendant signed the petition as the authorized representative of Kraze International and completed a Form 202 that designated defendant as an individual with authority to act on behalf of Kraze International. (Compl. ¶ 35; Docket nos. 1-1 at 4; 1-2). As part of the petition, Kraze International averred under oath that a rehabilitation proceeding had been initiated in South Korea for Kraze International and that certain deadlines relating to creditors and claims had begun. (Compl. ¶ 34). The rehabilitation plan was established to be due on August 1, 2016. *Id.*

On June 23, 2016, defendant submitted a resolution dated June 17, 2016 by the board of Kraze International that stated there was unanimous consent by the board to authorize Kraze International to file a petition seeking relief under Chapter 15 of the Bankruptcy Code and to authorize defendant to take further action necessary to effectuate the purpose and intent of the

6

resolution as defendant shall determine necessary, proper, or desirable. (Compl. ¶ 36; Docket no. 1-3). Defendant then submitted a declaration in support of the petition identifying the amount of capital, stockholders, assets, and liabilities of Kraze International.[5] (Compl. ¶ 37). Plaintiff opposed the petition on various legal grounds, including that Kraze International failed to properly identify assets located in the United States. (Compl. ¶ 38).

On July 29, 2016, Bankruptcy Judge Kenney granted Kraze International's petition for recognition of a Chapter 15 Bankruptcy, recognizing the South Korean proceedings as a foreign main proceeding. (Compl. ¶ 39; Docket no. 1-4). As part of that order, Judge Kenney stated that "[n]o action taken by the Foreign Representative . . . in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the South Korean Proceeding, this Recognition Order, or the Chapter 15 Case or any adversary proceeding therein, or any further proceeding commenced thereunder, shall be deemed to constitute a waiver of the immunity afforded such person under sections 306 and 1510 of the Bankruptcy Code." (Docket no. 1-4 at 3). Based on Judge Kenney's order, the civil action in Fairfax County Circuit Court was stayed on August 9, 2016 pending the outcome of the bankruptcy proceedings in South Korea. (Compl. ¶¶ 40, 43).

Plaintiff asserts that defendant and Kraze International were responsible for adhering to the Local Bankruptcy Rules for the Eastern District of Virginia, which includes a requirement that the foreign representative file any notice required under 11 U.S.C. § 1518 within fourteen (14) days after the date the representative becomes aware of the subsequent information. (Compl. ¶ 42). Under 11 U.S.C. § 1518(1), any time following the petition for recognition of a

---

[5] Despite stating in the complaint that the declaration was attached, plaintiff does not attach the declaration. Plaintiff appears to have named two different attachments as Exhibit 3 (Compl. ¶¶ 36, 37) and omitted this declaration.

foreign proceeding, the foreign representative shall promptly file a notice of change of status concerning any substantial change in the status of such foreign proceeding or the status of the foreign representative's appointment.

On September 7, 2016, the South Korean bankruptcy proceeding involving Kraze International was dismissed due in part to Kraze International's failure to file necessary documentation. (Compl. ¶ 45). Neither defendant nor Kraze International notified the Bankruptcy Court and plaintiff that the foreign main proceeding in South Korea had been dismissed until Kraze International filed a motion to dismiss on June 15, 2018. (Compl. ¶ 46). Plaintiff filed its response to Kraze International's motion to dismiss, as well as a motion for sanctions against Kraze International. (Compl. ¶ 51; Bankruptcy Proceeding Docket no. 61). On August 17, 2018, the Bankruptcy Court granted the motion for sanctions, awarded plaintiff $9,923.75 with a judgment rate of six percent (6%) per annum against Kraze International as a sanction, and dismissed Kraze International's counterclaim in the state court action. (Compl. ¶ 51; Docket no. 24-4 ¶ 21; Bankruptcy Proceeding Docket no. 72).

Plaintiff alleges that, on or about October 17, 2017, Kraze International transferred and/or sold significant corporate assets to international business conglomerate, LF Foods, including its trademark and trade name. (Compl. ¶ 47; Docket nos. 27 at 6; 27-3; 27-4). Kraze International transferred the remaining corporate assets to other third parties. (Compl. ¶ 47). These transferred assets are estimated to be valued in excess of $4,000,000. *Id.*

On February 13, 2019, after the stay was lifted, a jury in the Fairfax County Circuit Court action found that Kraze International breached its contract with plaintiff and awarded $750,000

in damages to plaintiff. (Docket no. 24-4 ¶¶ 3, 17; *id.* at 10).[6] Notably, the action was brought, and judgment was awarded, only against Kraze International. *Id.*; (Compl. ¶ 30).

## Proposed Findings of Fact and Recommendations

Federal Rule of Civil Procedure 55(a) authorizes the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on defendant's failure to file appropriate responsive pleadings within twenty-one (21) days of service, the Clerk of the Court entered default as to defendant. (Docket no. 21).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Federal Rule of Civil Procedure 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have subject matter jurisdiction over a claim, personal jurisdiction over a defaulting party, and venue must be proper before it can render a default judgment.

---

[6] The undersigned notes that nowhere in the complaint or memorandum in support of the motion for default judgment does plaintiff state that the civil suit between plaintiff and Kraze International went to trial, a jury found Kraze International breached the MFA, and plaintiff was awarded damages. That crucial fact first comes to light in an affidavit attached to the memorandum. (Docket no. 24-4 ¶¶ 3, 17). As the Seventh Circuit has noted, "judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because their time is scarce." *Nw. Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994). Plaintiff should have included critical facts of this nature in its initial pleadings.

Plaintiff alleges this court has subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1332. (Compl. ¶ 4; Docket no. 27 at 1–3). Diversity jurisdiction exists when the controversy is between a citizen of a state and a citizen of a foreign state and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2). An individual party's domicile determines its citizenship for purposes of diversity jurisdiction. *Thompson v. Gillen*, 491 F. Supp. 24, 27 (E.D. Va. 1980) (citing *Robertson v. Cease*, 97 U.S. 646 (1878)). Here, plaintiff is a Virginia corporation domiciled in Fairfax County, Virginia. (Compl. ¶ 2; Docket no. 27 at 1–2).[7] Defendant is a citizen of South Korea. (Docket no. 27 at 2). The amount in controversy does exceed $75,000, as plaintiff alleges compensatory damages in the amount of $950,088.75. (Docket no. 27 at 12).

Plaintiff alleges that this court has personal jurisdiction over defendant. In the complaint, plaintiff alleges that, as part of the MFA, "the parties exclusively elected to be subject to the jurisdiction of Virginia Courts, including the U.S. District Court for the Eastern District of Virginia and the Circuit Court of Fairfax County, Virginia, which is located in the Eastern District of Virginia." (Compl. ¶ 15). "A valid forum selection clause allows for personal jurisdiction in the chosen forum under the principles of 'contractual consent or waiver.'" *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 671 (E.D. Va. 2011) (quoting *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294 (Fed. Cir. 2002)). The court can assert the forum selection clause as grounds for jurisdiction even if plaintiff has not directly asserted the

---

[7] In plaintiff's supplemental memorandum, plaintiff asserts that "[w]hile the Plaintiff did not specifically allege it was domiciled in Fairfax County, the remaining allegations provide substantial evidence of this crucial fact, including the Affidavits of the CEO of Kraze Burger, Inc." (Docket no. 27 at 2). However, references in passing to where plaintiff does business are not enough. Plaintiff has the affirmative duty to plead citizenship for diversity jurisdiction, and the court is not to infer jurisdiction. *See Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998).

justification.[8] *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 162–63 (7th Cir. 1993) (affirming the district court's *sua sponte* dismissal of defendants based on the forum selection clause); *Ross v. King's Creek Plantation, LLC*, 2015 WL 13854910, at *11 (E.D. Va. Dec. 8, 2015) (applying a forum-selection clause to a defendant *sua sponte*).

This court has previously held that forum selection clauses can be enforced against a non-signatory to a contract "if the non-party is so 'closely related' to the dispute such that it becomes 'foreseeable that it will be bound.'" *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). Courts have determined that officers and directors of a signatory are "closely related" to the disputes arising out of agreements. *See Marano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 757–58 (8th Cir. 2001) (finding that a defendant that was a shareholder, officer, and director of a party to the agreements was "closely related" to the disputes arising out of the agreements and was bound by the forum selection provisions); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) (holding that a defendant was "closely related" to a transaction, as defendant was the Chief Financial Officer of one of the signatories of the purchase agreement).

---

[8] Despite the existence of the forum selection clause, plaintiff's only claim to personal jurisdiction over defendant in its complaint is that "he availed himself of the U.S. Bankruptcy Court when he made affirmative representations under oath as the foreign representative of Kraze [International] in connection with a legal action that was pending in the United States Bankruptcy Court for the Eastern District of Virginia, in which both Defendants sought affirmative relief from that Court." (Compl. ¶ 6). That argument clearly fails due to 11 U.S.C. § 1510 and Bankruptcy Judge Kenney's order recognizing the foreign proceeding (Docket no. 1-4 at 3), which provide that actions taken as a foreign representative in furtherance of the Chapter 15 proceeding do not subject that foreign representative to the jurisdiction of any court in the United States for any other purpose. It should not be incumbent upon this court to conduct legal research and articulate claims for plaintiff to simply overcome the threshold issue of personal jurisdiction, especially when there is so clearly a statute and order on point foreclosing the avenue that plaintiff cites as the rationale for personal jurisdiction.

Plaintiff is alleging that defendant, while serving in his capacity both as President and a director of Kraze International and the Chapter 15 proceeding foreign representative, improperly failed to report that the South Korean bankruptcy proceedings were dismissed. (Compl. ¶¶ 10, 46). As a result, the Bankruptcy Court prolonged the stay issued in the Chapter 15 proceeding, which gave Kraze International time to transfer its assets to third parties before plaintiff could get and enforce a judgment against Kraze International for breaching the MFA. (Compl. ¶ 47). Furthermore, defendant was aware that disputes with plaintiff would be governed by the MFA, especially since plaintiff had already brought a lawsuit against Kraze International for breaching the MFA by the time the Chapter 15 proceeding was commenced. (Compl. ¶ 30). Accordingly, the claims brought against defendant are closely related to the dispute between plaintiff and Kraze International, the signatories of the MFA, and it was foreseeable that defendant would be bound by the forum selection clause in the MFA. Therefore, this court has personal jurisdiction over defendant due to the MFA's forum selection clause.

Plaintiff further alleges that venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as the events complained of occurred in the Eastern District of Virginia Bankruptcy Court. (Compl. ¶ 5). Under 28 U.S.C. § 1391(b), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, the Chapter 15 proceeding was brought in this district, the alleged concealment was made in this district, and the underlying litigation between plaintiff and Kraze International took place in this district. (Compl. ¶¶ 30, 33, 46). Accordingly, venue is proper in this district.

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over the claims, personal jurisdiction over plaintiff, and venue is proper.

**Service**

Pursuant to Federal Rule of Civil Procedure 4(f)(1), an individual in a foreign country may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Here, the Hague Service Convention governs the validity of service abroad, as the United States and South Korea are signatories to the Hague Service Convention. *See Allstate Ins. Co. v. Hewlett-Packard Co.*, 2016 WL 613571, at *3 (M.D. Pa. Feb. 16, 2016). The Hague Convention provides that South Korea must designate a "Central Authority" to receive requests for service of judicial documents from abroad. Hague Service Convention, art. 2. Upon receiving a request for service, South Korea's Central Authority then serves the process or judicial documents on parties within South Korea according to South Korean law. *Id.*, art. 5. Following service on a party in South Korea, the Central Authority of Korea "shall complete a certificate," which "shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered." *Id.*, art. 6. Thereafter, the certificate shall be forwarded to the party requesting service. *Id.*

Following unsuccessful attempts to request defendant waive service, plaintiff, through Crowe Foreign Services, transmitted the summons, complaint, copy of Bankruptcy Court Local Rule 9022-1(C), notice, and waiver to the Central Authority of Korea in Seoul for service upon defendant in accordance with the Hague Service Convention protocols. (Docket no. 15 ¶ 7). On March 24, 2021, the Central Authority of Korea returned a completed Hague Certificate, executed by the Courts of Korea, indicating service of process was personally effected upon defendant on November 18, 2020. *Id.* ¶¶ 11–12.

13

Based on the foregoing, the undersigned recommends a finding that defendant was properly served with the summons and complaint.

### Grounds for Entry of Default

On September 30, 2022, the Clerk entered default against defendant for failure to plead or otherwise defend. (Docket no. 21). On March 24, 2023, plaintiff filed a motion for default judgment, a memorandum in support, and a notice of hearing for Friday, March 31, 2023. (Docket nos. 23–25). At the hearing on March 31, 2023, counsel for plaintiff appeared, but no one appeared on behalf of defendant.

On April 21, 2023, plaintiff filed its supplemental memorandum. (Docket no. 27). Included in the attachments is an answer from defendant dated April 11, 2023. (Docket no. 27-2). This answer has not been filed with this court by defendant, it comes years after a responsive pleading was due, and it does not include a motion for leave to file a late answer. Moreover, a default has been entered against defendant (Docket no. 21), and the answer is not a motion to set aside that default. Therefore, the answer is not considered by the undersigned in preparing this proposed findings of fact and recommendations. However, defendant is not precluded from filing a motion to set aside default and leave to file an answer before judgment has been granted.

Accordingly, the undersigned recommends a finding that defendant was properly served, that he failed to file a responsive pleading in a timely manner, and that the Clerk properly entered a default as to defendant.

### Liability

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendant failed to file an appropriate responsive pleading and is in default, defendant admits the factual

allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6). As set forth in the complaint, plaintiff brings one count of fraud and one count of fraudulent conveyance against defendant.

**Choice of Laws**

First, the court must determine which laws apply to the claims. Plaintiff asserts that Virginia law applies to the claims, as the parties agreed that Virginia law would apply to the MFA. (Compl. ¶ 12). While there are questions as to the applicability of the choice-of-law provision in the MFA to these tort claims against a non-party to the MFA, any dispute over the appropriate law may be waived if defendant does not raise it. *See Helena Agri-Enterprises, LLC v. VA7, LLC*, 2022 WL 2287417, at *3 n.2 (W.D. Va. June 23, 2022) (citing *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 227 n.9 (4th Cir. 2019); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316–17 (3d Cir. 2014)). Therefore, the court will apply Virginia law.

**Fraud**

Plaintiff brings a state-law fraud claim against defendant under Virginia law.[9] Fraud requires proof by clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 247 Va.

---

[9] In the complaint, plaintiff brings a claim for bankruptcy fraud. Plaintiff alleges that defendant's actions "represent a willful violation of the U.S. Bankruptcy Code and the improper use of the Bankruptcy Code and the Court in order to defraud [plaintiff] from securing assets of the corporation, while Kraze [International] was under protection of the bankruptcy court." (Compl. ¶ 65). As courts have previously held, bankruptcy fraud is prohibited by federal statute, 18 U.S.C. § 152, but that statute creates a criminal cause of action, not a private cause of action. *See Brown v. Oconee Fed. Fin. Corp.*, 2021 WL 9721156, at *2 (N.D. Ga. Apr. 5, 2021); *Escalante v. Escalante*, 2023 WL 395971, at *2 (D. Kan. Jan. 25, 2023). Plaintiff asks the court to construe the claim to be a state-law fraud claim instead of an action under 18 U.S.C. § 152. (Docket no. 27 at 3–6). Plaintiff also claims the existence of a fraudulent conspiracy. *Id.* at 3. The undersigned will construe the fraud claim to be a state-law fraud claim, but the counts brought in the complaint cannot reasonably be interpreted as bringing a claim for fraudulent conspiracy.

143, 148 (1994) (citations omitted).  Individuals can still be held liable for their own torts, even

if they were acting as an agent on behalf of their employer.  *See Van Buren v. Grubb*, 284 Va.

584, 591–92 (2012) ("It has long been settled in Virginia that employers and employees are

deemed to be jointly liable and jointly suable for the employee's wrongful act.") (citations

omitted).

Notably, plaintiff alleges this fraud is due in part to defendant's concealment of material

facts.  (Docket no. 27 at 3–6).  "Concealment of a material fact by one who knows that the other

party is acting upon the assumption that the fact does not exist constitutes actionable fraud."

*Allen Realty Corp. v. Holbert*, 227 Va. 441, 450 (1984) (citing *Clay v. Butler*, 132 Va. 464, 474

(1922)).  Proof of fraud by concealment requires "evidence of a knowing and deliberate decision

not to disclose a material fact."  *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 714 (2001)

(quoting *Norris v. Mitchell*, 255 Va. 235, 241 (1998)).  "Before nondisclosure may constitute

fraud . . . there must be a suppression of facts which one party is under a legal or equitable

obligation to communicate to the other, and which the other party is entitled to have

communicated to him."  *Doe by and Through Doe v. Baker*, 299 Va. 628, 656 (2021) (quoting

*Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 687 (Minn. Ct. App. 2010)).

Here, plaintiff alleges that defendant made false representations both in initiating the

Chapter 15 proceeding and in failing to inform the Bankruptcy Court of the dismissal of the

South Korean bankruptcy proceedings.  As to the first, plaintiff alleges that fraudulent statements

were made to the Bankruptcy Court by defendant to obtain a stay.  (Docket no. 27 at 5).  Plaintiff

specifically points to the Form 202 that defendant submitted to the Bankruptcy Court as

defendant's statements in commencing the Chapter 15 proceeding.  *Id.*  However, falsity is

required to make a false representation.  A review of the Form 202 indicates that defendant

declared that he was authorized to act on behalf of Kraze International and that he examined and had reasonable belief that the information contained in the documents submitted to the Bankruptcy Court to commence the Chapter 15 proceeding were true and correct. (Docket no. 1-2). While plaintiff alleges that Kraze International had an illicit intent in initiating the South Korean bankruptcy proceeding and then Chapter 15 proceeding, that intent does not automatically make defendant's representations false. Plaintiff must instead point to an actual representation or omission that is false, rather than make conclusions about the general intent in initiating proceedings. Without such a statement, the undersigned cannot find fraud in the efforts to obtain a stay through the Chapter 15 proceeding.

For the second justification, plaintiff alleges that defendant concealed material facts to prolong the stay by failing to advise the Bankruptcy Court and plaintiff of the dismissal of the South Korean proceedings. (Docket no. 27 at 5). Upon the recognition of the foreign main proceeding by the Bankruptcy Court, defendant had a legal obligation under 11 U.S.C. § 1518(1) and the Local Bankruptcy Rule 2015(e) to file a notice within fourteen (14) days of when defendant became aware that the South Korean bankruptcy proceedings were dismissed. *Id.* Defendant knowingly and deliberately waited over twenty-one (21) months to file the notice in an effort to prolong the stay. *Id.* During this period, Kraze International transferred all of its assets to third parties. (Compl. ¶ 47; Docket nos. 27 at 6; 27-3; 27-4). Therefore, the concealment of the dismissal of the South Korean bankruptcy proceedings represents an concealment sufficient to satisfy the false representation prong of the fraud analysis.

As for the other elements of the analysis, this concealment of the dismissal was material, as it caused the stay to improperly remain in place through June 2018, which allowed Kraze International time to transfer away its assets. The concealment was made intentionally,

knowingly, and with the intent to mislead, as defendant was aware of the dismissal of the South Korean bankruptcy proceeding, but defendant chose not to convey the information to the Bankruptcy Court to allow Kraze International to transfer its assets before the stay was lifted. Plaintiff relied on the false representations, as plaintiff did not pursue litigation any further in Fairfax County Circuit Court due to the stay put in place by the Bankruptcy Court and improperly prolonged by defendant. Plaintiff began prosecuting its claim once again after learning of the dismissal of the South Korean proceeding. Lastly, plaintiff was injured by its inability to recover against Kraze International due to the concealment and transfer of assets. Plaintiff has not been able to recover against Kraze International despite having a judgment against them from the Fairfax County Circuit Court.

**Fraudulent Conveyance**

Plaintiff also brings a claim for fraudulent conveyance against defendant under VA. CODE ANN. § 55.1-400 (2019).[10] Under Virginia law, defendant cannot be held liable for fraudulent conveyance. The Virginia Supreme Court has held on multiple occasions that the statute for fraudulent conveyance does not authorize an *in personam* judgment against an entity's corporate representative when an entity takes part in a fraudulent conveyance. *See La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 256–57 (2017); *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987); *Mills v. Miller Harness Co., Inc.*, 229 Va. 155, 158 (1985). "The statute merely renders void every conveyance or transfer made with intent to delay, hinder or defraud creditors . . . of or from what they are or may be lawfully entitled." *La Bella Dona*, 294 Va. at 256 (quoting *Cheatle*, 234 Va. at 212) (quotation marks omitted). Assuming, without deciding, that the transfers of assets from Kraze International to LF

---

[10] Plaintiff brought the fraudulent conveyance claim in the complaint citing VA. CODE ANN. § 55-80, which was in effect until September 30, 2019. (Compl. ¶¶ 72–88).

Foods and other third parties are void as fraudulent conveyances under the statute, an *in personam* judgment against defendant is not appropriate. Instead, Kraze International and the transferees are the only proper defendants in that instance.

In its supplemental memorandum, plaintiff cites to *Boyd v. Weisberg*, 75 Va. App. 725, 735 (2022), as an example where, as plaintiff contends, the "Court of Appeals of Virginia . . . held that an individual can be personally liable for his fraudulent conveyance acts in violation of Va. Code § 55.1-403."[11] (Docket no. 27 at 7). That contention is, at best, a misreading of the case. After a jury found that an individual defendant was personally liable for a fraudulent conveyance, defendant argued that the instructions proffered by the trial court "improperly imposed personal liability" for fraudulent conveyance. *Boyd*, 75 Va. App. at 737. The Court of Appeals found that defendant "cannot contest the phrasing of the instructions and verdict form after agreeing to them." *Id.* Once jury instructions are given without objection, they become law of the case and thereby bind the parties in the trial court and on appellate review, even if they impose an inappropriate standard. *Id.* at 736–37 (citing *Smith v. Commonwealth*, 296 Va. 450, 461 (2018)). Despite plaintiff's contention, at no point did the Court of Appeals find that these instructions were legally correct.

Accordingly, the undersigned recommends a finding that plaintiff has proven that defendant is liable for fraud but not fraudulent conveyance.

### Damages

In its supplemental memorandum, plaintiff seeks a judgment against defendant in the amount of: (1) $750,000 in damages as determined by the jury in the Fairfax County Circuit Court action; (2) post-judgment interest on the Fairfax County Circuit Court judgment at the rate

---

[11] VA. CODE ANN. § 55.1-403 addresses attorneys' fees in fraudulent conveyance actions. The undersigned assumes that plaintiff means VA. CODE ANN. § 55.1-400.

19

of six percent (6%) per annum following February 13, 2019; (3) $9,923.75 in attorneys' fees awarded by Judge Kenney; (4) $2,665 in costs of litigating this case; and (5) attorneys' fees for litigating this case, to be submitted. (Docket no. 27 at 11).  Unlike liability, allegations concerning damages are not admitted upon default. *See* Fed. R. Civ. P. 8(b)(6); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Instead, the court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

The Fairfax County Circuit Court awarded $750,000 against Kraze International in favor of plaintiff. (Docket no. 24-4 ¶¶ 3, 17).  Due to the tortious acts of defendant, plaintiff has not been able to enforce its judgment against Kraze International.  As a result, plaintiff has suffered an injury in the amount of $750,000.  However, plaintiff should not be able to recover twice on the Fairfax County Circuit Court judgment.  Therefore, defendant is jointly and severally liable for the Fairfax County Circuit Court judgment in the amount of $750,000.

Under Virginia law, the judgment rate of interest is six percent (6%) per annum, except that a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at six percent (6%) per annum, whichever is higher. VA. CODE ANN. § 6.2-302 (2010).  Plaintiff has not alleged that the MFA included a rate for post-judgment interest.  Accordingly, plaintiff is entitled to a post-judgment rate at six percent (6%) per annum starting on February 13, 2019.

The fraud committed by defendant took place before plaintiff filed a motion for sanctions in the Bankruptcy Court against Kraze International, and plaintiff was already aware of Kraze International's transfer of assets to third parties when it filed the motion. (Bankruptcy Proceeding Docket no. 61).  In light of plaintiff's knowledge at the time, it could have sought

20

sanctions against defendant as well as Kraze International, but it only sought sanctions against Kraze International. Consequently, Judge Kenney only issued sanctions against Kraze International. (Bankruptcy Proceeding Docket no. 72). Therefore, plaintiff is not entitled to Judge Kenney's award of sanctions from defendant.

Prevailing parties are entitled to an award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1). Accordingly, plaintiff is entitled to the $2,665 in costs for this litigation.

The general rule in Virginia is that "the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Prospect Dev. Co., Inc. v. Bershader*, 258 Va. 75, 92 (1999). The Virginia Supreme Court has recognized an exception to this general rule, in that the court may award attorneys' fees to a defrauded party. *Id.* As such, the undersigned recommends a finding that plaintiff is entitled to reasonable attorneys' fees from defendant. However, the undersigned notes that the affidavit in support of attorneys' fees will still need to be reviewed upon submission to determine whether the fees are reasonable and appropriate with the understanding that plaintiff has not prevailed on all the claims asserted, has pursued its claims against only one defendant, and incurred additional fees in having to address issues that should have been addressed in its initial pleadings.

### Conclusion

For the reasons stated above, the undersigned recommends that default judgment be entered in favor of plaintiff Kraze Burger, Inc. and against defendant Il Seon Noh in the amount of **$750,000** with post-judgment interest to accrue at a rate of six percent (6%) per annum from February 13, 2019 until paid, costs in the amount of $2,665, and reasonable attorneys' fees. The undersigned also recommends that the entry of default against defendant Kraze International, Inc. be set aside and that the claims against it be dismissed without prejudice.

**Notice**

By means of the court's electronic filing system, by mailing a copy of these proposed findings of fact and recommendations to defendant Il Seon Noh, 1301-602, 30, Pangyowon-ro 82beon-gil, Bundang-gu, Seongnam-si, Gyeonggi-do, 13540, Seoul, Republic of Korea, and to Il Seon Noh c/o Mr. Wonki Lee, 4F, 624 Samseong-ro, Gangnam-gu (Haecheon Bldg), Seoul 06085, Republic of Korea, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of these proposed findings of fact and recommendations.  A failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 19th day of May, 2023.

/s/

John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia